LEGAL/125246978.v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEAMFITTERS LOCAL UNION NO. 420, | |
| Plaintiff, | |
| v. | No. 2:19-cv-3047-BMS |
| MALLINCKRODT ARD, LLC., et al., | |
| Defendants. | |

**<u>REPLY BRIEF IN SUPPORT OF MALLINKRODT ARD LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     Plaintiff's Claims under the RICO Act Fail (Counts I and II)..............................2

    A.     Plaintiff, as an Indirect Purchaser, Lacks Standing to Assert a Claim under
RICO Based on the Alleged "Distribution" and "Pricing" Schemes .....................2

    B.     Plaintiff's "Marketing Scheme" Allegations Do Not Satisfy RICO's
Proximate Cause Requirement ..........................................................................5

    C.     Plaintiff Has Not Alleged Racketeering Activity ....................................................9

    D.     Plaintiff Has Not Alleged a RICO Enterprise........................................................10

II.    Plaintiff Fails to State Any State Law Claims .................................................13

    A.     Plaintiff Fails to State a Claim under the Pennsylvania's Consumer
Protection Law (Count III) ...............................................................................13

    B.     Plaintiffs' Non-Pennsylvania State Law Consumer Protection Claims Fail
(Count IV)......................................................................................................15

    C.     Plaintiff Fails to State a Negligent Misrepresentation Claim (Count V)..............17

    D.     Plaintiff's Remaining State Law Claims Must Be Dismissed (Counts VI-
VIII) ...............................................................................................................18

CONCLUSION......................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019) ..............................................................................................5

*Barbieri v. Wells Fargo & Co.*,
  2014 WL 7330461 (E.D. Pa. Dec. 22, 2014) ...........................................................12

*Bolick v. Ne. Indus. Servs. Corp.*,
  2015 WL 540066 (M.D. Pa. Feb. 10, 2015) .............................................................12

*City of Rockford v. Mallinckrodt ARD, Inc.*,
  360 F. Supp. 3d 730 (N.D. Ill. 2019), *reconsideration denied*, No. 17 C 50107,
  2019 WL 2763181 (N.D. Ill. May 3, 2019) ........................................................*passim*

*Commonwealth v. TAP Pharmaceutical Products, Inc.*,
  36 A.3d 1197 (Pa. Commw. Ct. 2011), *vacated*, 626 Pa. 1, 94 A.3d 350
  (2014) .......................................................................................................................17

*Cty. of Summit v. Purdue Pharma L.P. (In re Nat'l Prescription Opiate Litig.)*,
  2018 U.S. Dist. LEXIS 213657, 2018 WL 6628898 (N.D. Ohio Dec. 19,
  2018) ..........................................................................................................................6

*Frederico v. Home Depot*,
  507 F.3d 188 (3rd Cir. 2007) ....................................................................................9

*Freedom Med. Inc. v. Gillespie*,
  634 F. Supp. 2d 490 (E.D. Pa. 2007) ......................................................................13

*Goldstein v. Phillip Morris, Inc.*,
  2004 PA Super 260, 854 A.2d 585 (2004) ...............................................................18

*Hunt v. U.S. Tobacco Co.*,
  538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) .....................................15

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) .........................................................................................1, 2, 3, 4

*In re Insulin Pricing Litig.*,
  No. 3:17-CV-0699-BRM-LHG, 2019 WL 643709 (D.N.J. Feb. 15, 2019) .............7

*In re Insurance Brokerage Antitrust Litigation*,
  618 F.3d 300 (3d Cir. 2010) ...............................................................................10, 11

*In re Neurontin Mktg. & Sales Practices Litigation*,
   712 F.3d 21 (1st Cir. 2013) ................................................................6, 7

*Indiana/Kentucky/Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*,
   No. CIV.A. 13-7167, 2014 WL 2115498 (E.D. Pa. May 21, 2014) .......................10

*International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc. et al.*,
   No. 2018-14059 ...............................................................................17

*Koken v. Steinberg*,
   825 A.2d 723 (Pa. Commw. Ct. 2003) .................................................18

*Levy-Tatum v. Navient Sols.*,
   183 F. Supp. 3d 701 (E.D. Pa. 2016) .................................................18

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) ..............................................................13

*McCarthy v. Recordex Serv., Inc.*,
   80 F.3d 842 (3d Cir. 1996) ................................................................4

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis United States LLC*,
   No. 3:18-cv-2211-BRM-LHG, 2019 WL 1418129 (D.N.J. Mar. 29, 2019) ............4

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
   2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ....................................15, 16

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
   305 F. Supp. 3d 337 (D.R.I. 2018) .........................................10, 11, 12

*Sidney Hillman Health Center of Rochester v. Abbott Laboratories*,
   873 F.3d 574 (2017) ..........................................................................8

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
   171 F.3d 912 (3d Cir. 1999) ..............................................................18

*Wallace v. Sys. & Computer Tech. Corp.*,
   1997 WL 602808 (E.D. Pa. Sept. 23, 1997) ........................................17

*Weinberg v. Sun Co.*,
   565 Pa. 612, 777 A.2d 442 (Pa. 2001) .............................................15

*Whitaker v. Herr Foods, Inc.*,
   198 F. Supp. 3d 476 (E.D. Pa. 2016) .................................................18

**INTRODUCTION**

Plaintiff's Opposition ("Opp.") altogether ignores several of Mallinckrodt's arguments for dismissal and asserts various contradictory theories that are not relevant to disposition of this motion.  It does not remedy Plaintiff's failure to allege facts sufficient to state any claims against Mallinckrodt ARD, LLC ("Mallinckrodt"), and the Complaint should be dismissed in its entirety.

Plaintiff's counsel made some of these same allegations on behalf of a class of payors against the same defendants in *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019), *reconsideration denied*, No. 17 C 50107, 2019 WL 2763181 (N.D. Ill. May 3, 2019).  That case, like this one, was brought by a putative class of third-party payors who alleged that the price they paid for Acthar was inflated as a result of Mallinckrodt's distribution agreement with ESI and an acquisition by Questor (later acquired by Mallinckrodt) of rights to market another drug, Synacthen.  There, the allegations were couched as antitrust claims, and the court dismissed the claims of one plaintiff on the ground that, as an indirect purchaser, it lacked standing to recover damages under federal antitrust laws.

This Plaintiff, a payor who is an indirect purchaser like the one whose antitrust claims were dismissed in *Rockford*, would also lack standing to pursue federal antitrust claims under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  To avoid the same fate, Plaintiff packages the same allegations in claims brought under RICO and the consumer protection laws of 42 states and the District of Columbia.  But the result is the same: under well-settled law, an indirect purchaser lacks standing under RICO to pursue claims based on the same theory underlying its antitrust claims. While this third-party payor Plaintiff purports to "disavow" the antitrust laws, it cannot do an end run around *Illinois Brick* by asserting the same theory, based on the same operative facts, and labeling it as a RICO claim.

The Complaint suffers from additional flaws that require its dismissal. *First*, Plaintiff has failed to allege facts (let alone with particularity) that plausibly support its theory that Mallinckrodt engaged in fraud of any kind—whether asserted as mail and wire fraud predicates to a federal RICO claims or fraud, deception, or misrepresentations under state law. *Second*, the connection between Mallinckrodt's alleged conduct and Plaintiff's alleged injury is too attenuated to satisfy RICO's proximate cause requirement as well as essential elements of his claims under Pennsylvania state law. *Third*, Plaintiff's non-Pennsylvania claims fail because, as its counsel well knows, a third-party payor lacks standing to pursue claims like these under the laws of states where it does not reside and in which no purchases are alleged to have been made.

For the reasons stated in Mallinckrodt's Motion to Dismiss ("Mot.") and in this Reply brief, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

## ARGUMENT

### I.  Plaintiff's Claims under the RICO Act Fail (Counts I and II)

#### A.  Plaintiff, as an Indirect Purchaser, Lacks Standing to Assert a Claim under RICO Based on the Alleged "Distribution" and "Pricing" Schemes

As Mallinckrodt explained in its opening brief, Plaintiff's status as an indirect purchaser bars it from recovering under RICO for alleged overpayments caused by the so-called "Distribution" and "Pricing" Schemes. *See* Mot. at 11 n.2. While Plaintiff purports to have "disavowed" antitrust claims, *see, e.g.*, Opp. 14, its allegations are materially identical to those that were rejected in *Rockford*. There, payor plaintiffs relied on the same allegations to support federal antitrust claims. Because one plaintiff, Acument, had allegedly purchased Acthar from CVS, a non-party, the court dismissed the plaintiff's claims under the rule articulated in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which holds that indirect purchasers lack standing to recover damages under the federal antitrust laws. *See Rockford*, 360 F. Supp. 3d at 752.

This case, despite Plaintiff's effort to "disavow" antitrust theories, is no different: Plaintiff is an indirect purchaser seeking to recover overcharges based on the same alleged conduct by the same Defendants. Indeed, Plaintiff's allegations concerning a purported "Distribution Scheme" and "Pricing Scheme" are materially—and largely word-for-word—identical to those asserted by plaintiffs in *Rockford*. Both allege that "in 2007 Mallinckrodt decided to embark" on a "'new strategy.'" Compl. ¶ 6; Second Amended Complaint (Doc. 98) ¶ 7, *City of Rockford v. Mallinckrodt, ARD, Inc. et al.*, No. 3:17-cv-50107 (N.D. Ill.) ("Rockford Compl."). Specifically, "on July 2, 2007, Mallinckrodt restricted its distribution from three wholesalers, termed Wholesalers 'A', 'B', and 'C' in its 2007 10-K, to just Express Scripts." Compl. ¶ 131; Rockford Compl. ¶ 48. "The goal of this 'new strategy' was to lock patients into receiving Acthar through one distribution channel" and "to ensure prescription distribution and payment through one source." Compl. ¶ 132; Rockford Compl. ¶ 49. As a vehicle to effectuate their purported scheme (the "Distribution Scheme"), Defendants created the "Acthar Support and Access Program" or "ASAP" ("ASAP"). Compl. ¶ 158; Rockford Compl. ¶ 50; *see also* Compl. ¶¶ 166-77 and Rockford Compl. ¶¶ 52-53 (describing ASAP program details word-for-word). Plaintiffs in both cases allege that after limiting Acthar distribution pursuant to the "Distribution Scheme," Mallinckrodt agreed with [Express Scripts] to raise" the prices charged for Acthar (the "Pricing Scheme"). Compl. ¶ 11; Rockford Compl. ¶ 8, including a "1,310% increase in the span of a month." Compl. ¶ 183; Rockford Compl. ¶ 90.

Plaintiff's claims here are not brought under the antitrust laws. But Plaintiff cannot do an end run around *Illinois Brick* by casting its claims under RICO and various state laws. Just as it does under the federal antitrust laws, an indirect purchaser lacks standing under RICO to pursue claims based on allegations like these. *See McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855

(3d Cir. 1996); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis United States LLC*, No. 3:18-cv-2211-BRM-LHG, 2019 WL 1418129, at \*14 (D.N.J. Mar. 29, 2019).

This case is squarely analogous to *MSP Recovery Claims*, where assignees of recovery rights for Medicare Advantage plans attempted to state a RICO claim for an alleged overcharge on insulin. 2019 WL 1418129, at \*2. The product in question was sold to a wholesaler and then to a pharmacy that dispensed it to consumers and collected a copay. *See id.* at \*14. The court, in granting defendants' motion to dismiss, found that "the distribution chain alleged in this matter is fatal to Plaintiff[s'] RICO claims." *Id.* at \*16. In doing so, the court made clear that "the indirect purchaser rule applies to RICO claims." *Id.* at \*14 (citing *McCarthy*, 80 F.3d at 855).

The "indirect purchaser" rule "appl[ies] equally to allegations of RICO violations." *McCarthy*, 80 F.3d at 855. The "central and dispositive issue," therefore, is whether this Plaintiff is a direct purchaser. *McCarthy*, 80 F.3d at 855. Plaintiff, by its own admission, is not. In its opposition to Defendants' Motion to Transfer, Plaintiff describes itself as an indirect purchaser, stating correctly that "[t]he Court in *Rockford* granted Defendants' Motions to Dismiss the claims of indirect purchasers, *like Local 420* . . . based on a lack of standing under the indirect purchaser rule of *Illinois Brick* . . . ." Opp. to Defs.' Mot. to Transfer at 17 (emphasis added). The Complaint's allegations confirm this: it alleges that as part of Mallinckrodt's supposed "distribution scheme," it "limited the distribution of Acthar from multiple distribution outlets to just one, **CuraScript**." Compl. ¶ 8 (emphasis added). It alleges that Acthar is "distributed **only** through 'specialty pharmacy distributors' ('SPDs') and 'specialty pharmacy providers' ('SPPs')." Compl. ¶ 4 (emphasis added). And it alleges that Plaintiff's employees received healthcare benefits through Independence Blue Cross, which coordinated its Acthar purchases through Future

Scripts—a pharmacy benefit manager unrelated to any defendant. *See id.* ¶¶ 28; 698.[1]  Plaintiff is indisputably an indirect purchaser, and therefore lacks standing to bring claims based on the so-called "Distribution" and "Pricing" allegations.

**B.    Plaintiff's "Marketing Scheme" Allegations Do Not Satisfy RICO's Proximate Cause Requirement**

Plaintiff's "Marketing Scheme" allegations fail for another reason: the connection between Mallinckrodt's alleged conduct and Plaintiffs' alleged harm is too attenuated to establish causation under RICO as a matter of law. *See* Mot. 10-11.  The *Rockford* court already found—in dismissing RICO claims based on the same facts underlying Plaintiff's "Distribution" and "Pricing" Schemes—that it was "unclear how either Mallinckrodt or Express Scripts communicated any 'misrepresentations,' let alone communications made directly, to [Plaintiffs]."  *City of Rockford*, 360 F. Supp. 3d at 775 ("Should plaintiffs choose to replead, in order to properly state a [RICO] claim, plaintiffs must plausibly allege Mallinckrodt and/or Express Scripts communicated misrepresentations directly to plaintiffs.").[2]  Plaintiff's "Marketing Scheme" allegations here are equally flawed.

Courts routinely reject RICO claims brought by payors based on alleged misrepresentations made when marketing pharmaceuticals to doctors because of the intervening independent decisions made by intermediaries between promotion and payment.  The cases on which Plaintiff relies are not to the contrary; they also support dismissal.  *See* Opp. 13-14.

---

[1] Plaintiff's allegations concerning product flows, delivery, and who remains "at risk" for the sale, *see id.* ¶¶ 169-70, are not relevant.  The Supreme Court's recent decision in *Apple Inc. v. Pepper* makes clear that the direct purchaser rule focuses only on the identity of the "immediate buyer." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520-21 (2019).

[2] Plaintiffs did not file a further amended complaint in *Rockford*, though Acument filed a new action in Tennessee state court.  *See Acument Global Techs., Inc. v. Mallinckrodt ARD, Inc. et al.*, CT-2275-19 (Tenn. Cir. Ct.).

Plaintiff relies on a First Circuit case, *In re Neurontin Marketing & Sales Practices Litigation*, 712 F.3d 21, 28 (1st Cir. 2013), for the proposition that RICO claims can be asserted by payors against drug manufacturers allegedly marketing drugs for unapproved uses.   But Plaintiff's allegations differ from those at issue in *Neurontin* in key ways.   First, in *Neurontin*, defendant Pfizer was alleged to have engaged in a fraudulent marketing campaign that included representations made directly to third-party payors and those responsible for formulary placement, not just to prescribing doctors.   *See id.*, 712 F.3d at 28.   Here, Plaintiff does not allege that Mallinckrodt made any direct misrepresentations to any third-party payor.

Second, in *Neurontin*, the payor was Kaiser, one of the largest health maintenance organizations (HMOs) in the United States.   *See id.*   As an HMO, Kaiser operated an effectively closed system—Kaiser Foundation Health Plan had "exclusive contractual relationships" with regional Permanente Medical Groups (PMGs), each of which had its own Pharmacy and Therapeutics (P&T) Committee to manage the PMG's formulary or list of drugs.   *See id.* at 28-29. Another Kaiser entity, Kaiser Foundation, operated health care facilities and pharmacies.   *See id.* at 28.   In other words, patients saw Kaiser physicians, who prescribed medication off of a Kaiser formulary, which was dispensed at a Kaiser pharmacy.   *See id.*   Accordingly, the alleged misrepresentations to doctors were to *Kaiser* doctors and thus to the payor itself.

*County of Summit* is likewise distinguishable.   In that case, plaintiffs did not assert economic injury arising from the pricing or payment for opioid medications; they sought recovery based on municipal costs incurred in an effort to stem the flow of "excess opioids into local communities."   *Cty. of Summit v. Purdue Pharma L.P. (In re Nat'l Prescription Opiate Litig.)*, 2018 U.S. Dist. LEXIS 213657, *69, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018).   Accordingly, the case is not instructive with respect to the sufficiency of Plaintiff's allegations here.

In this case, by contrast, the causal chain is significantly less direct, involving more independent actors and decisions.  The individual who was prescribed Acthar was the spouse of one of Plaintiff's members.  *See* Compl. ¶ 29.  That spouse saw a rheumatologist in Pennsylvania. *See id.* ¶ 584.  The rheumatologist prescribed Acthar.  *See id.* ¶¶ 29; 584.  Independence Blue Cross then coordinated with a pharmacy benefit manager, Future Scripts.  *See id.* ¶ 28.  The Complaint does not allege that any Defendant (or anyone else) made any misrepresentations to the rheumatologist or that any Defendant (or other party) made any misrepresentations to either Independence Blue Cross or Future Scripts.  *See id.* ¶¶ 28, 584, 698-99.  Plaintiff alleges that after the prescriptions were approved, Plaintiff received medication  from Future Scripts or another specialty pharmacy, *see id.* ¶ 28, but does not specify whether Plaintiff paid Future Scripts or Independence Blue Cross.  Even accepting Plaintiff's incomplete allegations as true, the causal chain alleged here includes multiple independent actors and events and is significantly more attenuated than that in *Neurontin*.

The Third Circuit, in *In re Avandia Marketing, Sales Practices & Product Liability Litigation*, has made clear that proximate cause is lacking in RICO cases "when the conduct directly causing the harm [is] distinct from the actions that gave rise to the fraud."  804 F.3d 633, 642 (3d Cir. 2015).  The court in *Avandia* allowed the RICO claims—based on alleged misrepresentations about the <u>safety</u> of the drug—to proceed to discovery because the court concluded that misrepresentations as to the health risks of Avandia "caused TPPs and PBMs to place Avandia in the formulary."  *Id.* at 644*;* s*ee In re Insulin Pricing Litig.*, No. 3:17-CV-0699-BRM-LHG, 2019 WL 643709, at *10 (D.N.J. Feb. 15, 2019) ("plaintiffs [in *Avandia*] were third-party payors who included the product, Avandia, in their formulary decisions at favorable rates in *direct reliance* on material misrepresentations made by the defendant, a pharmaceutical

company") (citing *Avandia*, 804 F.3d at 636).  Other circuits to consider claims more analogous to those asserted here have concluded that independent decisions between promotion and payment preclude a payor like Plaintiff from recovering under RICO.  In *Sidney Hillman Health Center of Rochester v. Abbott Laboratories*, 873 F.3d 574 (2017), for example, the Seventh Circuit affirmed dismissal of RICO claims brought by two welfare-benefit plans seeking recovery of payments for drugs that allegedly were marketed to doctors for off-label uses in violation of the law.  The court, citing the difficulty of "[d]isentangling the effects of the improper promotions from the many other influences on physicians' prescribing practices", concluded that the causal chain—linking promotion to doctors and purchases by payors—was too long for the payor to have any hope of establishing proximate cause.  *Id.* at 577.  Agreeing with the holdings of other circuits, the court held that  "improper representations made to physicians do not support a RICO claim by Payors, several levels removed in the causal sequence." *Id.* at 578.

The Complaint here does not identify the entity that made formulary decisions for Plaintiff, let alone allege that such entity placed Acthar on its formulary in reliance on any misrepresentation by Mallinckrodt.  *See generally* Compl.  Plaintiff, in fact, does not allege that Mallinckrodt made any misrepresentation to it or any other third-party payor relating to Acthar.  These allegations are not sufficient to support a finding of proximate cause, and Plaintiff's marketing-based RICO claims fail for this reason alone.

### C. Plaintiff Has Not Alleged Racketeering Activity

Plaintiff does not dispute that it must plead the fraudulent conduct it alleges as a predicate to mail and wire fraud with particularity under Rule 9(b).  *See* Opp. 11-12; *see also* Pl.'s Opp. to UBC Mot. to Dismiss 4-5.  But, as Mallinckrodt argued in its opening brief, nowhere in its 741-page Complaint does Plaintiff allege the requisite "date, time, and place of the alleged fraud or otherwise inject with precision or some measure of substantiation the fraud allegation." *Frederico*

*v. Home Depot*, 507 F.3d 188, 200 (3rd Cir. 2007) (citation omitted). Plaintiff cites only "the detailed averments of the ASAP program," which, it argues, "explain how the Defendants utilize the ASAP form to misrepresent the Acthar uses and doses, and then require patients and doctors [to] sign the same form, indicating the 'medical necessity' of the Acthar, even for unapproved uses and doses." Opp. 11-12.

Plaintiff's allegations concerning the "ASAP program" are the same alleged predicate acts underlying the RICO claims dismissed in *Rockford*, 360 F. Supp. 3d at 774. In *Rockford*, as here, plaintiffs "call[ed] attention to the Acthar Start Forms mailed to existing and prospective patients and payors." *Id.* Noting that plaintiffs' fraud allegations were "thin," the court held that plaintiff failed to "specify what about those [ASAP] forms constitute[s] a misrepresentation." *Id.* Likewise, here, Plaintiff does not identify a "misrepresentation" in the ASAP form, and it does not allege facts showing that the form's requirement that patients and doctors certify "medical necessity" was deceptive. *See* Opp. 11-12 (citing Compl. ¶¶ 165-67). The only allegations Plaintiff points to in its Opposition, other than those already rejected in *Rockford*, do not support a claim that **Mallinckrodt** engaged in racketeering activity, let alone with the particularity required under Rule 9(b). Plaintiff points only to conduct by third-party doctors directed to additional third parties—not Plaintiff, *see* Opp. 12 (citing Compl. ¶¶ 285, 377, 383), and conclusory allegations concerning Defendants' alleged use of "mails and wires." *See* Opp. 12 (citing Compl. ¶¶ 480-82). Plaintiff's failure to identify in its Opposition a single specific misrepresentation by Mallinckrodt is fatal to its RICO claim. *See, e.g.*, *Indiana/Kentucky/Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, No. CIV.A. 13-7167, 2014 WL 2115498, at *4, *7 (E.D. Pa. May 21, 2014) (dismissing complaint for failure to supply "all of the essential factual background that

would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue") (citation and internal quotation marks omitted)).

### D.       Plaintiff Has Not Alleged a RICO Enterprise

In response to Mallinckrodt's argument that Plaintiff failed to allege a RICO enterprise, *see* Mot. 6-7, Plaintiff argues that the Complaint alleges a "HUB" that "also had multiple spokes" and that "these spokes consisted of the few large SPPs like Accredo, with whom Mallinckrodt and UBC dealt."   Opp. 6.   Elsewhere, Plaintiff argues that there is a "hub-and-spoke enterprise involving Mallinckrodt and UBC as 'associated' in the HUB, along the spokes of their MSLs, KOLs, and SPPs."   Opp. 7-8.   In support of its "hub-and-spoke" theory, Plaintiff cites *In re Insurance Brokerage Antitrust Litigation*,  618 F.3d 300, 374 (3d Cir. 2010), and *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 305 F. Supp. 3d 337, 340 (D.R.I. 2018).   Each of these opinions makes clear that a RICO hub-and-spoke enterprise claim requires not just a "hub" and "spokes," but also a connecting "rim" of the wheel.   Plaintiff's Complaint lacks the requisite rim, and its Opposition offers no suggestion to the contrary.

In *In re Insurance Brokerage Antitrust Litigation*, the Third Circuit affirmed that a rimless hub-and-spoke configuration does not adequately plead a RICO association-in-fact enterprise, as it fails to satisfy the basic requirement that the components "function as a unit," that they be "put together to form a whole."  618 F.3d 300, 374 (3d Cir. 2010) (citing *Boyle*, 129 S. Ct. at 2244). *Insurance Brokerage* involved an alleged conspiracy among insurance brokers and insurers to allocate purchasers among groups of insurers.   *See* 618 F.3d at 336.   With only one exception— relating to a bid rigging conspiracy that centered around a single broker—the Third Circuit concluded that the allegations relating to the broker-centered enterprises were "fatally defective" because "plaintiffs had failed to plead facts plausibly suggesting collaboration among the

insurers"—that is, the spokes—leaving the hub-and-spoke structure "lack[ing] a unifying rim." *Id*. at 374.

Plaintiff also cites an out-of-circuit district court decision, *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 305 F. Supp. 3d 337, 340 (D.R.I. 2018), as support for its "hub-and-spoke" enterprise theory. Again, the opinion serves only to highlight the failings of Plaintiff's allegations. In *Sheet Metal Workers*, plaintiffs alleged that CVS charged them more than the required Usual and Customary (U&C) price for drugs in light of a discounting program offered to individual cash-paying CVS customers. Plaintiffs alleged that "four of the country's largest PBMs—Caremark, Express Scripts, Inc., OptumRx, Inc., and MedImpact Healthcare Systems, Inc.—were in on the scheme, too." *Id.* at 341. The complaint alleged that the PBMs "communicated with each other and with CVS in order to orchestrate the alleged fraud" and that "CVS played courier between two PBMs," advising one PBM that the other had agreed to participate in CVS's scheme. *Id.* at 349. The court observed that "each PBM, at the behest of CVS, acted against its individual interest by choosing to adopt an internal policy interpreting U & C price to exclude" CVS's discounted price, "with the expectation (and in at least one instance, a confirmation) that competitors would do the same." *Id.* at 350. Accordingly, the court concluded that plaintiffs adequately pled a rim around a spoked hub. *See id.* The court expressly cautioned that "hub-and-spoke enterprises have routinely been found insufficient to support RICO claims" where they are "rimless." *Id.* at 346-47.

Here, by contrast, Plaintiff has not alleged any facts to connect the "spokes" of its alleged conspiracy. Plaintiff argues in a conclusory manner that "the Mallinckrodt/UBC HUB coordinat[ed] all the activities of the spokes in a tacit agreement to overcharge payors." Opp. 6. The Complaint does not, however, allege any communications among the Specialty Pharmacy

Providers that it argues are "spokes" or any other facts that would plausibly suggest an agreement among SPPs with regard to Acthar pricing.  The Complaint likewise does not allege any communications or other facts showing that the other purported "spokes" were connected by any "rim."  Accordingly, Plaintiff's "hub-and-spoke" theory fails and Plaintiff has failed to allege a plausible RICO enterprise.

Furthermore, to the extent that Plaintiff attempts to allege an association-in-fact enterprise involving Mallinckrodt and UBC alone concerning an "exclusive arrangement for the conduct, management, and control of the newly formed ASAP program, and the shared 'HUB,'" Opp. 9, that theory also fails.  That was the same RICO theory rejected by the court in *Rockford*, and, as noted, Plaintiff purports to disclaim its antitrust-based theories.  *See, e.g.*, Opp. at 14.[3]  The Complaint does not allege any facts to suggest that the distribution arrangement was anything more than a "run-of-the-mill" business arrangement.  *Bolick v. Ne. Indus. Servs. Corp.*, 2015 WL 540066, at *12 (M.D. Pa. Feb. 10, 2015); *see Barbieri v. Wells Fargo & Co.*, 2014 WL 7330461, at *6 (E.D. Pa. Dec. 22, 2014) (dismissing RICO claims for failure to allege in "any cogent or logical way" how defendants' ordinary business activities turned into illegal predicate acts).

In addition, as Plaintiff concedes, *see* Opp. 14, dismissal of Plaintiff's RICO claim requires dismissal of its RICO conspiracy claim.  *See Lum v. Bank of Am.*, 361 F.3d 217, 227 n.5 (3d Cir. 2004) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient") (citation omitted); *Freedom Med. Inc. v. Gillespie*, 634 F. Supp. 2d 490, 515 (E.D. Pa. 2007) ("A section

---

[3] The *Rockford* court did not reach the question of whether plaintiffs alleged a plausible RICO enterprise because the court had already rejected plaintiffs' RICO claims on other grounds.  *City of Rockford*, 360 F. Supp. 3d at 772-776.

1962(d) claim cannot be pursued where there is no cognizable RICO enterprise or pattern of racketeering activity alleged by the defendant or co-conspirators.").

For the above reasons, the Court should dismiss all of Plaintiff's RICO-based claims (Counts I and II) with prejudice.

## II.      Plaintiff Fails to State Any State Law Claims

The pleading defects in Plaintiff's federal RICO claims apply equally to Plaintiff's state law claims.  Plaintiff argues that Mallinckrodt engaged in fraudulent and deceptive conduct but has failed to allege facts to support its legal conclusions.  Moreover, despite asserting consumer protection claims under the laws of dozens of states and other Pennsylvania claims requiring that Plaintiff allege justifiable reliance and causation, Plaintiff's Opposition ignores such issues entirely.

### A.      Plaintiff Fails to State a Claim under the Pennsylvania's Consumer Protection Law (Count III)

Plaintiff fails to allege any facts showing conduct by Mallinckrodt that violates the UTPCPL or facts showing that Plaintiff justifiably relied on such conduct.  *See* Mot. at 12-13.

Plaintiff's Opposition confirms its failure to identify a single misrepresentation by Mallinckrodt or otherwise allege facts showing that Mallinckrodt engaged in unfair or deceptive conduct.  Plaintiff argues that it paid too much for Acthar based on a "strategy to commit consumer fraud."  Opp. 18.  In support of that legal conclusion, Plaintiff relies principally on paragraph 521 as outlining Mallinckrodt's alleged "overarching specific acts and practices in violation of the UTPCPL." *Id.*; *see also* Pl.'s Opp. to UBC Mot. to Dismiss 7-10 (quoting ¶ 521 in full).  Paragraph 521 contains the following factual allegations, none of which identify misrepresentations or deception that could possibly give rise to a claim under the UTPCPL:

- In 2007, Mallinckrodt entered into an "exclusive distribution agreement" without disclosing the same to Local 420, ¶ 521(a);

13

- Mallinckrodt sent or "caused to be sent bills for Acthar." ¶ 521(a);

- In 2007, Mallinckrodt and UBC "agreed to adopt the above-described ASAP program and the Acthar Start Form in 2007, and to maintain and use the ASAP and Acthar Start Form through 2018 (when Plaintiff paid for Acthar)," ¶ 521(b);

- Mallinckrodt's 2007 announcement concerning the exclusive distribution agreement "failed to disclose that all aspects of Acthar distribution, pricing and product sales were now being coordinated through UBC as part of a 'hub' of services for which Mallinckrodt contracted," ¶ 521(c);

- The failure to disclose coordination through UBC was meant to "deceive Local 420 and its beneficiary about the Mallinckrodt 'hub' of patient care at UBC as it concerns the new conditions for which Acthar is not indicated," ¶ 521(b);

- Mallinckrodt "deceived Local 420 in the decision to raise the prices of Acthar, and the lack of value of Acthar for the prices being charged," ¶ 521(d); and "claimed to offer discounts off the inflated prices of Acthar," ¶ 521(d).

The few factual allegations intermingled with conclusory legal assertions do nothing more than describe the distribution structure for Acthar. Plaintiff's string cite to other miscellaneous, conclusory allegations, *see* Opp. 18-19 (citing Compl. ¶¶ 191, 6-8, 38, 96, 120-59, 205, 199-205), reinforces the Complaint's failure to satisfy basic notice pleading requirements.

Plaintiff fails to allege justifiable reliance on any purported misrepresentation. This is an essential element of a claim under the UTPCPL. "The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. U.S. Tobacco Co*., 538 F.3d 217, 222 (3d Cir. 2008), *as amended* (Nov. 6, 2008). In *Hunt*, the Third Circuit explained that where the harm is alleged to arise from a product's inflated price, the statute's justifiable-reliance requirement requires a plaintiff to "show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." *Id*. at 222 n.4 (citing *Weinberg*

14

*v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 445-46 (Pa. 2001)).  Plaintiff makes no such allegation here.

Plaintiff's Opposition does not even argue the point.  This is perhaps because a similar claim, brought by Plaintiff's counsel against pharmaceutical companies on behalf of another union pension fund, was dismissed on that basis.  *See Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 4235773 (E.D. Pa. Sept. 25, 2017).  There, the plaintiff brought claims under the UTPCPL (as well as other claims under the laws of 48 other states) against drug manufacturers premised on a similar inflated price theory.  This Court rejected the UTPCPL claim due to the plaintiff's failure to allege that it justifiably relied on the alleged misrepresentation.  *Id.* at *25.  The Court should dismiss Count III with prejudice.

### B.    Plaintiffs' Non-Pennsylvania State Law Consumer Protection Claims Fail (Count IV)

Plaintiff's remaining state law consumer protection claims under the laws of 42 states and the District of Columbia suffer from the same flaws.  More fundamentally, however, Plaintiff lacks standing under Article III to pursue claims under the laws of states where they neither purchased nor reimbursed beneficiaries' purchases of Acthar.  This, too, cannot be lost on Plaintiff's counsel; in *Apotex*, this Court rejected claims brought under the laws of jurisdictions "to which Plumbers pleads no connection and in which Plumbers alleges no injuries."  2017 WL 4235773, at *13. Judge Brody's decision in that case pointed to several other cases in this district holding that benefit plans seeking recovery based on their reimbursement of members' drug purchases and stated emphatically that it was "incontrovertible" that plaintiff lacked standing to bring claims under the consumer protection laws of other states.  *Id.*

Like Plumbers in that case, Plaintiff alleges it reimbursed purchases of Acthar in Pennsylvania but fails to allege it made purchases in any other state.  *See* Compl. ¶ 21 (alleging

Plaintiff "is located in Pennsylvania and it reimbursed for Acthar and other drugs in Pennsylvania"). Plaintiff does not have standing to pursue claims under the laws of those other jurisdictions, and it is not clear whether other unnamed class members would. *See Apotex*, 2017 WL 4235773, at *13 (noting courts have "repeatedly held" that plaintiffs lack standing "to raise state law claims for states where they are not located and where they did not purchase any drugs or reimburse their members for the purchase of any drugs"). Count IV should be denied in its entirety, with prejudice.[4]

### C.   Plaintiff Fails to State a Negligent Misrepresentation Claim (Count V)

Plaintiff's Opposition does not meaningfully address its failure to allege facts supporting each element of a negligent misrepresentation claim. Plaintiff cites Count V and the 50 preceding paragraphs as "detailing Mallinckrodt's misrepresentations" but does not identify any of them. *See* Opp. 22-23. As with its UTPCPL claim, Plaintiff does not argue that it justifiably relied on any allegedly deceptive conduct. *See id.* Mallinckrodt demonstrated in its opening brief that the Complaint's failure to allege that Mallinckrodt directed any misrepresentation to Plaintiff requires dismissal. *See* Mot. 21 (citing *Wallace v. Sys. & Computer Tech. Corp.*, 1997 WL 602808, at *23 (E.D. Pa. Sept. 23, 1997)). Plaintiff's Opposition offers no response to Mallinckrodt's arguments. *See* Opp. 22-23.

The cases that Plaintiff cites do not support the sufficiency of its allegations of negligent misrepresentation. *Commonwealth v. TAP Pharmaceutical Products, Inc.*, 36 A.3d 1197, 1210

---

[4] Mallinckrodt's opening brief also identified additional, state-specific reasons for dismissal of nearly all such claims, *see* Mot. 16-20, and Plaintiff's Opposition ignores those arguments. *See* Opp. 19-22 (arguing that Plaintiff has satisfied Article III standing requirements with regard to state law consumer protection claims). All of Plaintiff's state law consumer protection claims are unsupported by the allegations in the Complaint. The Court should dismiss them.

(Pa. Commw. Ct. 2011), *vacated*, 626 Pa. 1, 94 A.3d 350 (2014), did not address claims at the pleading stage.  There, the court held—post-trial—that the evidence of reliance going in both directions was sufficient to preclude a trial court's JNOV order.  *See id.*  In *International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc. et al.*, No. 2018-14059 (Pa. Ct. Com. Pl. Jan. 8, 2019), the court did not explain its ruling—its order consisted of a single sentence.  And Plaintiff's citation to *Koken v. Steinberg*, 825 A.2d 723 (Pa. Commw. Ct. 2003), which involved claims against Deloitte based on its conduct in performing audit and actuarial duties, is superficial. Plaintiff cites the *Koken* court's observation that in arguing for dismissal, the defendant, Deloitte, "cynically ignore[d] fifty previous paragraphs" of the plaintiff's complaint, *id.* at 731, but does not articulate a basis for comparing the allegations in that case with those here.

### D.      Plaintiff's Remaining State Law Claims Must Be Dismissed (Counts VI-VIII)

Dismissal of Plaintiff's substantive underlying claims requires dismissal of its aiding and abetting and conspiracy claim, unjust enrichment claim, and claim for declaratory and injunctive relief.  *See Goldstein v. Phillip Morris, Inc.*, 2004 PA Super 260, ¶ 20, 854 A.2d 585, 590 (2004) (civil conspiracy); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) (citing *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999)) (unjust enrichment); *Levy-Tatum v. Navient Sols.*, 183 F. Supp. 3d 701, 708 (E.D. Pa. 2016) (declaratory and injunctive relief).  Plaintiff's Opposition does not argue otherwise.

Plaintiff's unjust enrichment claim also fails for independent reasons.  Plaintiff alleges "no direct relationship" between it and Mallinckrodt.  *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010).  Plaintiff also does not allege that Mallinckrodt "refused to provide a service or good after Plaintiff[] provided [it] with a benefit."  *Id*.  Accordingly, Plaintiff's allegations fail to show that this would be an "appropriate situation to imply quasi-contract liability."  *Id.*

**CONCLUSION**

For the reasons stated above and in Mallinckrodt's opening brief, the Court should dismiss Plaintiff Steamfitters Local Union No. 420's Complaint.  Moreover, because Plaintiff's claims each lack merit as a matter of law, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: October 1, 2019                 Respectfully submitted,

/s/ Jonathan D. Weiss
Jonathan D. Weiss
**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2815
jdweiss@MDWCG.com

Daniel J. Sherry
**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8260
djsherry@MDWCG.com

Matthew M. Wolf
Laura S. Shores
Sonia K. Pfaffenroth
Adam Pergament
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5462
matthew.wolf@arnoldporter.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2019, a true and correct copy of the foregoing

document was electronically filed with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to all counsel of record.


Dated: October 1, 2019                              Respectfully submitted,


                                                    /s/ Jonathan D. Weiss
                                                    Jonathan D. Weiss