IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEAMFITTERS LOCAL UNION NO. 420, individually and on behalf of all others similarly situated,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED BIOSOURCE CORPORATION, now known as UNITED BIOSOURCE LLC, a wholly owned subsidiary of UNITED BIOSOURCE HOLDINGS, INC.,<br>　　　　Defendant. | CIVIL ACTION<br><br><br><br><br>NO.  19-3047 |

HODGE, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　October 31, 2025

**MEMORANDUM**

　　　Before the Court is Defendant United Biosource Corporation's ("Defendant" or "UBC") request to bifurcate this proceeding under Federal Rule of Civil Procedure 42(b) for a determination of the collateral estoppel effects of the Bankruptcy Court's decision in *In re Mallinckrodt PLC*, 638 B.R. 57 (Bankr. D. Del. 2021) (the "AICs Bankruptcy Decision").[1] The Parties' positions on bifurcation are detailed in Defendant's Position on Bifurcation (ECF No. 124), Plaintiff Steamfitters Local Union No. 420's ("Plaintiff" or "Steamfitters") Memorandum of Law in Opposition to Defendant's Claim to Apply Collateral Estoppel to Bifurcate the Proceedings Under Federal Rule of Civil Procedure 42(b) (ECF No. 123), Defendant's Reply in Support of

---

[1] The Court clarifies that this issue was not raised as a motion by Defendant. Rather, bifurcation was originally raised by Defendant in the December 28, 2022 Joint Status Report (ECF No. 113) following Mallinckrodt ARD LLC's Notice of Bankruptcy Discharge (ECF Nos. 111, 113). In response, Judge Berle Schiller ordered the Parties to provide briefs on bifurcation in light of the potential collateral estoppel effects of the Bankruptcy Decision on January 4, 2023 (ECF No. 117). This Court ordered supplemental briefing on the bifurcation issue on October 9, 2024 (ECF No. 135) after a status hearing with the parties on October 7, 2024 (ECF No. 137).

Position Statement on Bifurcation (ECF No. 129), Plaintiff's Response to Defendant's Position on Bifurcation (ECF No. 130), Defendant's Supplemental Brief Regarding Collateral Estoppel (ECF No. 140), Plaintiff's Supplemental Memorandum (ECF No. 142), Plaintiff's Notice of Supplemental Authority in Relation to Defendant's Request to Bifurcate Proceedings (ECF No. 132), and Defendant's response thereto (ECF No. 133).

Defendant submits that bifurcation is proper to determine the potential collateral estoppel effect on Plaintiff's claims of the U.S. Bankruptcy Court for the District of Delaware's decision in *In re Mallinckrodt PLC*, 638 B.R. 57 (Bankr. D. Del. 2021). Plaintiff asserts that collateral estoppel is inapplicable, and therefore bifurcation is inappropriate. Because the Court finds that the Bankruptcy Court's decision does not meet the requirements to act as collateral estoppel to this action, bifurcation under Rule 42(b) is inappropriate. Thus, the Defendant's request is denied.

I.  **PROCEDURAL BACKGROUND**[2]

Steamfitters commenced this action against Mallinckrodt Ard LLC ("Mallinckrodt") and UBC on July 12, 2019. (ECF No. 1.) The Complaint alleges various RICO and tort claims based on Mallinckrodt and UBC's "new strategy," which, according to Plaintiff, created a RICO enterprise that resulted in Plaintiff, a third-party payor, paying a higher price for the drug Acthar. (*Id.* ¶ 7.)

In October 2020, Mallinckrodt filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. (ECF No. 124 at 4); *In re Mallinckrodt PLC*, Case No. 1:20-bk-12522 (Bankr. D. Del.) (the "Bankruptcy Proceeding"). Plaintiff was a creditor in the Bankruptcy Proceeding. (ECF No. 124 at 20.) Plaintiff, along with other clients represented by Plaintiff's attorney, Haviland Hughes, formed a group known as the Ad Hoc Acthar Group

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

("AHAG"), which comprised third-party payors and their beneficiaries who participated in the Bankruptcy Proceeding. *Bankruptcy Proceeding*, Dkt. No. 3048 at 1; (ECF No. 124 at 4.) AHAG filed proofs of claims throughout the Bankruptcy Proceeding based on the same conduct that it sues for here. (ECF No. 123 at 3; ECF No. 129 at 9.)

On April 30, 2021, Attestor Limited and Humana Inc., insurance companies who pay for Acthar prescribed to their patients, jointly referred to in the Bankruptcy Proceeding as the Acthar Insurance Claimants ("AICs"), filed administrative claims against Mallinckrodt based on alleged violations of federal and state antitrust laws, violations of RICO, and other torts arising from Mallinckrodt's alleged strategy to inflate the price of Acthar. (ECF No. 124 at 8–9; ECF No. 130 at 5.) On June 28, 2021, Plaintiff and other AHAG members filed a Motion for Leave to File Class Proof of Claim (the "Motion") in the Bankruptcy Proceeding, which was based on previously filed claims that Mallinckrodt falsely inflated the price of Acthar. *Bankruptcy Proceeding*, Dkt. No. 3048; (ECF No. 124 at 9.) The Motion sought to authorize AHAG, which included Steamfitters, to file administrative class proofs of claim for post-petition Acthar expenditures. *Bankruptcy Proceeding*, Dkt. No. 3048 ¶ 1. The Motion does not mention any administrative claims that Steamfitters filed against Mallinckrodt for post-petition conduct, but it does recount administrative claims other members of AHAG filed for post-petition conduct.[3] *Bankruptcy Proceeding*, Dkt. No. 3048 at 2, 6; (ECF No. 123 at 4.) On August 2, 2021, Mallinckrodt filed its objections to the Acthar-related administrative claims; Mallinckrodt's objected to the administrative claims asserted

---

[3] Defendant correctly points to the fact that "Plaintiff and the other AHAG members filed a motion in the Bankruptcy Court to have 'their rights to a class proof of claim for administrative claims decided by [the Bankruptcy Court].'" ECF No. 129 at 3. Although Steamfitters was included in this Motion as a member of the purported class that would file administrative proofs of claim for Acthar expenditures, it is not clear from that filing whether or not Steamfitters actually made any post-petition payments for Acthar. *See Bankruptcy Proceeding*, Dkt. No. 3048. The Motion was subsequently withdrawn. *Bankruptcy Proceeding*, Dkt. No. 3535.

3

by the AICs and certain members of AHAG, which did not include Plaintiff. *Bankruptcy Proceeding*, Dkt. No. 3529; (ECF No. 124 at 9.) On August 3, 2021, the AHAG withdrew their Motion. *Bankruptcy Proceeding*, Dkt. No. 3535. On October 19, 2021, the Bankruptcy Court overruled Mallinckrodt's objections and allowed the AICs' administrative claims to proceed to trial. *Bankruptcy Proceeding*, Dkt. No. 4792; (ECF No. 124 at 10.) The Bankruptcy Court noted that in addition to the AICs, there were third-party payors who initiated lawsuits, which would have included Steamfitters, and those plaintiffs were "not seeking to have administrative expense claims allowed here." *Bankruptcy Proceeding*, Dkt. No. 4792 at 2 n.7.

From November 8 through November 19, 2021, the Bankruptcy Court held a trial on the AICs' administrative claims (the "AICs Trial"). *Bankruptcy Proceeding*, Dkt. No. 4792; (ECF No. 130 at 6; ECF No. 124 at 10.) On December 6, 2021, the Bankruptcy Court issued an oral bench ruling, finding that the AICs' antitrust and RICO claims failed. (ECF No. 124 at 11.) On December 13, 2021, Plaintiff and other AHAG claimants filed a motion to withdraw their remaining proofs of claim in the Bankruptcy Court, which the Bankruptcy Court granted on March 30, 2022. *Bankruptcy Proceeding*, Dkt. Nos. 5767, 6980 (ECF No. 124 at 12; ECF No. 123 at 3; ECF No. 123-4.)[4] On December 21, 2021, the Bankruptcy Court issued its Opinion and Final Order confirming its findings from the December 6, 2021 oral bench ruling. *In re Mallinckrodt PLC*, 638 B.R. 57 (Bankr. D. Del. 2021) (the "AICs Bankruptcy Decision").

---

[4] Although Defendant alleges that some of Plaintiff's claims were judged invalid by the Bankruptcy Court, the claims Defendant refers to relate to Plaintiff's efforts to be a class claimant and claims against Mallinckrodt affiliates. (ECF No. 129 at 3.) Those holdings do not have bearing on the issues in this action.

4

## II.     LEGAL STANDARD

### a. Bifurcation

Federal Rule of Civil Procedure 42(b) allows a court "to order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The court may do so "[f]or convenience, to avoid prejudice, or to expedite and economize." *Id.* The decision to bifurcate a trial is left to the trial court's broad discretion and must be decided on a case-by-case basis. *Innovative Office Products, Inc. v. Spaceco, Inc.*, Case No. 05-04037, 2006 WL 1340865, at *1–2 (E.D. Pa. May 15, 2006). The moving party bears the burden of establishing that bifurcation "would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." *Id.*

### b. Collateral Estoppel

"The principles of res judicata and collateral estoppel (or claim and issue preclusion) apply to decisions of the bankruptcy courts." *Santos v. U.S. Dep't of Hous. & Urb. Dev.*, Case Nos. 89-2893, 89-2979, 89-4824, 1992 WL 165677, at *3 (E.D. Pa. July 2, 1992). The preclusive effect of prior federal judgments is governed by federal law. *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007); *see, e.g.*, *Peloro v. United States*, 488 F.3d 163 174–75 (3d Cir. 2007) (applying federal collateral estoppel law to determine the preclusive effect of a bankruptcy court judgment in a subsequent federal court action).

Under federal common law, collateral estoppel applies when "(1) an identical issue was raised in a prior proceeding; (2) the issue sought to be precluded was actually litigated and decided in the prior action; (3) the determination of the issue sought to be precluded was essential to supporting a valid and final judgment on the merits in the prior proceeding; and (4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior

proceeding." *In re Adesanya*, 630 B.R. 435, 452 (Bankr. E.D. Pa. 2021), *aff'd sub nom. Novartis Pharms. Corp. v. Adesanya*, 645 B.R. 733 (E.D. Pa. 2022); *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019). Collateral estoppel, unlike its sister doctrine of claim preclusion, does not allow a court to "automatically conclude that the mere opportunity to litigate a particular legal issue in a prior action is sufficient to warrant preclusion. Issue preclusion does not apply if an issue has not been actually raised, considered, and decided in a manner necessary to the prior judgment." *Alevras*, 226 F. App'x at 228.

Although the doctrine of collateral estoppel once required mutuality, that requirement has since been eliminated, and a litigant who was not a party to the first case may use collateral estoppel offensively or defensively against a party who lost on the decided issue in the first case. *Allen*, 449 U.S. at 94–95; *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 (1971). Generally, however, collateral estoppel may only be used against a person or entity that was a party to the prior suit, absent the presence of one of six established categories related to privity.[5] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Defensive, as opposed to offensive, non-mutual collateral estoppel applies in cases where a defendant seeks to use collateral estoppel to prevent re-litigation of issues that a plaintiff has already litigated and lost. *See Pourzal v. Prime Hosp. Corp.*, No. CIV 1999-139, 2006 WL

---

[5] Those six categories, as stated by the Third Circuit paraphrasing *Taylor*, are as follows: "(1) the nonparty agrees to be bound by the determination of issues in an action between others; (2) a substantive legal relationship—i.e., traditional privity—exists that binds the nonparty; (3) the nonparty was 'adequately represented by someone with the same interests who [wa]s a party'; (4) the nonparty assumes control over the litigation in which the judgment is rendered; (5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and, (6) the nonparty falls under a special statutory scheme that 'expressly foreclose[es] successive litigation by nonlitigants.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312–13 (3d Cir. 2009) (citing *Taylor*, 553 U.S. at 893–95). Defendant does not contend in its briefing that any of these categories apply to the present case.

3230024, at *3 (D.V.I. Oct. 30, 2006). In contrast to offensive non-mutual collateral estoppel, which presents a "unique potential for unfairness," courts "have been more willing to permit" invocation of defensive collateral estoppel. *See id.* at *4 (citing *Blonder-Tongue Labs., Inc.*, 402 at 329–30). The burden of proof for a collateral estoppel defense lies with the party asserting the doctrine. *In re Nat'l Medical Imaging, LLC*, 439 B.R. 837, 845 (E.D. Pa. 2009).

### III.   DISCUSSION

Defendant argues that bifurcation is proper because "early determination of the collateral estoppel effects of the [AICs Bankruptcy Decision] will promote judicial economy and reduce litigation costs by determining what issues, if any, remain in this case." (ECF No. 124 at 13.) Plaintiff counters that collateral estoppel does not apply because none of the requisite elements are met and, therefore, bifurcation is improper. (ECF No. 123 at 1–2.) The Court finds that application of collateral estoppel is inappropriate because Plaintiff did not have a "full and fair opportunity" to litigate the issues settled in that suit. Because this required element of collateral estoppel is not satisfied, the Court need not make a determination as to whether the remaining three elements are met here.

### A.  Plaintiff Did Not Have a "Full and Fair Opportunity to Litigate" in the AICs Trial

Defendant has failed to show that Steamfitters had a full and fair opportunity to litigate the issues in the AICs Trial such that the AICs Bankruptcy Decision should act as collateral estoppel because Plaintiff was not a party to that trial and was not provided the same opportunities to present its case that a litigant would be.[6] "[C]ollateral estoppel cannot apply when the party against whom

---

[6] While Defendant focuses on Plaintiff's participation in the broader Bankruptcy Proceedings in its briefs (*see, e.g.,* ECF No. 124 at 5–7), the Court is concerned with Plaintiff's opportunity to fully litigate the issues in the AICs Trial specifically because the final judgment rendered as a result of that trial is that which Defendant argues binds Plaintiff under the collateral estoppel doctrine. (See ECF No. 129 at 7–9.)

the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). Absent the presence of certain circumstances related to privity, which neither party asserts are present here, "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Here, it is necessary for the Court to distinguish the term "party in interest," used in bankruptcy proceedings, from "party" as used outside of the bankruptcy context. Under Section 1109(b) of the Bankruptcy Code, a party in interest to the bankruptcy includes "the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). Such a party in interest "may raise and may appear and be heard on any issue" in a Chapter 11 case. *Id.*; (ECF No. 129 at 2, 10.) This right to be heard under Section 1109(b) extends to adversary proceedings, which are in essence lawsuits within larger bankruptcy cases in which rights under causes of action are adjudicated. *See In re Adelphia Communs. Corp.*, 285 B.R. 848, 854–55 (Bankr. S.D.N.Y. 2002). An appearance or opportunity to be heard at an adversary proceeding pursuant to Section 1109(b), however, does not convert a party in interest into a party to the adversary proceeding—that would require intervention, which the parties do not contend occurred here.[7] *See id.* at 856 (noting that even

---

[7] The Court notes there is some ambiguity as to whether Plaintiff would have had standing to intervene in the AICs Trial, which was based on the AICs' administrative claims. (ECF No. 142 at 4, 9–11; ECF No. 129 at 6.) To establish an administrative claim under 11 U.S.C. § 503(b), the claimant must typically show that (1) there was "a post-petition transaction between the creditor and the debtor," and (2) "the estate . . . receive[d] a benefit from the transaction." *In re Garden Ridge Corp.*, 321 B.R. 669, 676 (Bankr. D. Del. 2005). Defendant asserts that Plaintiff "falsely claims that it never asserted administrative claims in the *Bankruptcy Proceeding*, when, in fact, it plainly did." (ECF No. 129 at 6 (citing *Bankruptcy Proceeding*, Dkt. No. 3048 ¶ 64).) As evidence, Defendant cites to AHAG's Motion for Leave to File Class Proof of Claim (the "Motion"), in which AHAG, including Steamfitters, sought leave to file administrative claims as a class. The Motion was later withdrawn. *Bankruptcy Proceeding*, Dkt. No. 3535. By contrast, Steamfitters

intervenors do not necessarily possess the same rights in an action as those who actually own the action). Although Steamfitters may have spoken and been present at the AICs Trial "every day" (ECF No. 124 at 10–11; ECF No. 129 at 11), it was not a named party to that trial, as Defendant conceded at the October 16, 2024 hearing. (ECF No. 137 at 25:11–26:17.)

In its briefs, Defendant argues that "*[a]ll* that is required to be considered a party to a litigation is that the person 'be subjected to the jurisdiction of the court by being served, appearing in court, or participating in the litigation." (ECF No. 124 at 19 (citing *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251 (3d Cir. 2016)[8] (emphasis added) (internal quotations omitted)).) However, Defendant's characterization does not reflect the full picture or scope that the Court must consider, particularly in the bankruptcy context, which provides a forum for myriad adversary proceedings and claims to be litigated within the larger bankruptcy proceeding. If the Court were to accept the rule that Defendant propounds, it would lead to absurd results in bankruptcy proceedings where any creditor who appeared at the adversary proceeding would become a party to that proceeding and bound by its result. *See T.O.S. Indus., Inc. v. Ross Hill Controls Corp.*, 72 B.R. 749, 751 (S.D. Tex. 1987) ("To say that one fringe creditor can litigate an important defense, and that all other creditors are bound by that isolated result would be an assumption not allowed by the doctrine of issue preclusion.").

---

asserts that it did not file an administrative claim for post-petition conduct (ECF No. 123 at 4), even though Steamfitters was part of the purported class that sought to file administrative claims in the Motion. Steamfitters' position is inconsistent with its filing in the Bankruptcy Proceeding, and the Court therefore does not give credence to its argument that it would not have standing in the AICs Trial. Nevertheless, as explained *infra*, the Court finds that Plaintiff did not have a "full and fair opportunity" to litigate in the AICs Trial.

[8] *National Medical Imaging, LLC v. Ashland Funding LLC* is distinguishable from this case because the court there found that the bankruptcy court in the prior proceeding "reached holdings regarding [defendant] that were supported by detailed analyses." The defendant was then provided the opportunity to move for reconsideration and to file a notice of appeal, and the defendant was explicitly listed as a party to the appeal. 648 F. App'x at 256. No such circumstances exist here.

9

Nor does it follow that a party in interest's decision to be heard at an adversary proceeding under Section 1109(b) affords that party the same rights as if they owned and conducted the litigation themselves such that a "full and fair opportunity to litigate" was given. A party in interest exercising his right to be heard pursuant to Section 1109(b) does not have the right to conduct independent discovery, present evidence, or cross-examine witnesses. *See In re Bicoastal Corp.* 122 B.R. 771, 774 (Bankr. M.D. Fla. 1990). Indeed, Defendant sets forth no evidence that Steamfitters had any such rights in the AICs Trial. (ECF No. 123 at 7; ECF No. 142 at 10.) While Defendant discusses Plaintiff's submission of five expert reports in connection with the broader bankruptcy proceeding (ECF No. 140 at 5), it does not posit that those reports were submitted in connection to the AICs Trial and there is no evidence they were considered during that trial. *Bankruptcy Proceeding*, Dkt. No. 3723. In fact, the Bankruptcy Court noted in its October 19, 2021 decision allowing the AICs' administrative claims to proceed to trial that there were separate third-party payors who initiated lawsuits, which would have included Steamfitters, and those plaintiffs were "not seeking to have administrative expense claims allowed here." *Bankruptcy Proceeding*, Dkt. No. 4792; (ECF No. 124 at 10.) The AICs Bankruptcy Decision centered on the administrative expense claims of the AICs and does not mention Plaintiff's claims, Plaintiff, or any other members of AHAG.[9]

---

[9] Defendant's characterization of *Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir. 1999) as a "markedly similar situation" to this one does not persuade this Court. (ECF No. 129 at 6.) In *Witowski*, the Third Circuit affirmed that an arbitration award dismissing claims of fraudulent conveyance against a transferor of property barred the trustees from asserting the same claims of fraudulent conveyance against the transferee in the transaction. *Id.* at 197–98. The defendant in *Witowski* leveraged collateral estoppel against the trustees, "who were a party to the prior proceeding." *Id.* Because Plaintiff, against whom Defendant here leverages collateral estoppel, was not a party to the potentially preclusive proceeding, *Witowski* does not save Defendant's argument.

Defendant argues that the Third Circuit "has recognized that a litigant need not present any evidence for it to have had a full and fair opportunity to litigate relevant issues and for collateral estoppel to apply," citing to a case in which the Circuit found that collateral estoppel was appropriately applied using a default judgment. (ECF No. 124 at 21–26 (citing *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997)).) The default judgment line of cases, which deals with the exceptional circumstances in which a party "deliberately prevents resolution of a lawsuit," is inapplicable, as there is no evidence of such obstructionist conduct by Plaintiff here. *See In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997). Moreover, those cases involved circumstances in which the prior default judgment was asserted against a litigant who was actually party to the proceeding.

In this instance, the fact that Plaintiff had submitted proofs of claim with the same issues as the present litigation does not change the result. Those proofs of claim were not part of the AICs Bankruptcy Decision and were never ruled upon. (ECF No. 123 at 3.) Defendant argues that "Plaintiff's late withdrawal of its proofs of claim does not negate its consent to the Bankruptcy Court's jurisdiction and waiver of its jury rights," citing *In re Vaughan Co.*, No. 12-CV-0197 WJ/SMV, 2014 WL 12789686, at *6 (D. N.M. July 22, 2014). However, that same case notes that "in situations where a proof of claim is filed and withdrawn *before an adversary proceeding commences*, that proof of claim is treated as a legal nullity and the Seventh Amendment right to trial by jury is not affected." *Id.* at *5 (emphasis in original). Such is the case here. The AICs Bankruptcy Decision that Defendant argues has preclusive effect was not based on any of Plaintiff's proofs of claim.[10] Plaintiff cannot be estopped by a judgment that does not name it as a

---

[10] Plaintiff argues that *Harrington v. Purdue Pharma, L.P.*, Case No. 23-124, 2024 WL 3187799 (June 27, 2024) supports the finding that the AIC claims have "no bearing on the Steamfitters claims in this case." (ECF No. 132 at 4.) However, *Harrington* discusses the scope of bankruptcy

11

party, much less make any reference to Plaintiff, simply because Plaintiff had and withdrew claims that involved the same subject matter as that judgment.

Ultimately, Plaintiff's active role in the overall bankruptcy proceeding cannot act as a substitute for its absence from the AICs Bankruptcy Decision that Defendant asserts precludes the issues here. Defendant has not met its burden to show that Plaintiff had a "full and fair opportunity to litigate" in the AICs Trial such that collateral estoppel applies.

## IV.  CONCLUSION

Given that Defendant has failed to meet its burden to show that Steamfitters had a full and fair opportunity to litigate the issues in the AICs Trial, collateral estoppel cannot apply. The Court need not conduct analysis of the remaining elements of collateral estoppel given that the failure to meet one element is fatal to Defendant's collateral estoppel defense. Because collateral estoppel does not apply, Defendant's bifurcation request under Rule 42(b) is moot. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
HODGE, KELLEY B., J.

---

discharge and whether it can apply to non-debtor third parties. UBC does not argue such discharge applies here (ECF No. 133 at 4). Thus, that case is inapplicable.